Andrew L. Morrison (AM 1071)
Zoe F. Feinberg (ZF 7705)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400

Michael E. Lowenstein (ML 5876)
Kathleen M. K. Matthews (KM 9138)
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, Pennsylvania 15219
Telephone: (412) 288-3131

*Attorneys for rue21, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

PEGASUS INTEGRATED CONSULTING, CORP.,

                Plaintiff,

     -against-

RUE 21, INC.

                Defendant.

---------------------------------------------------------------------x

Case No. 07 CV 3245 (WHP)

[N.Y. Sup. Ct. N.Y. County
Index No. 07/601111]

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT rue21'S INC.'S MOTION TO DISMISS OR TRANSFER

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND FACTS ..........................................................................................................3

ARGUMENT ..........................................................................................................................9

I.    THIS ACTION SHOULD BE DISMISSED BECAUSE VENUE IN THE
      SOUTHERN DISTRICT OF NEW YORK IS IMPROPER ...............................................9

      A.    Plaintiff's Challenge To The Forum Selection Clause Is Baseless......................10

      B.    The Forum Selection Clause Is Mandatory ...........................................................12

      C.    The Forum Selection Clause Is Valid And Enforceable........................................12

      D.    The Forum Selection Clause Applies To The Entire Complaint ...........................14

      E.    This Case Should Be Dismissed In Its Entirety, Not Transferred ........................15

II.   ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED FOR
      IMPROPER VENUE ..............................................................................................16

      A.    The Forum Selection Clause Is Dispositive Of, Or, At A Minimum,
            Central To, The Transfer Analysis Under Section 1404(a) ...................................17

      B.    Numerous Other Factors Also Support Transfer To The Western District
            Of Pennsylvania Pursuant To Section 1404(a) .....................................................18

III.  ALTERNATIVELY, THIS ACTION SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........19

CONCLUSION.....................................................................................................................23

# TABLE OF AUTHORITIES

## Cases

Aceros Prefabricados, S.A. v. Tradearbed, Inc., 282 F.3d 92 (2d Cir. 2002) ............................... 11

Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40 (2d Cir. 1991) ...................................................... 2

Anselmo v. Univision Station Group, Inc., 1993 WL 17173 (S.D.N.Y.
    Jan. 15, 1993) ................................................................................................................... 15

Bense v. Interstate Battery System of America, Inc., 683 F.2d 718
    (2d Cir. 1982) ................................................................................ 14, 15, 16, 17, 18

Carnival Cruise Lines v. Shute, 499 U.S. 585 (1991) ............................................................. 13, 18

Carson/Depaul/Ramos v. The Phillies, 2006 WL 2988224 (Pa. Cm. Pl.
    Oct. 17, 2006) ................................................................................................................... 21

Citibank, N.A. v. Collins, 1991 WL 64174 (S.D.N.Y. Apr. 15, 1991) ................................. 13, 19

Composite Holdings v. Westinghouse Electric Corp., 992 F. Supp. 367
    (S.D.N.Y. 1998) ............................................................................................................... 14

Direct Mail Prod. Servs. Ltd. v. MBNA Corp., 2000 WL 1277597
    (S.D.N.Y. Sept. 7, 2000) ................................................................................................. 15

Elite Parfums, Ltd. v. Rivera, 872 F. Supp. 1269 (S.D.N.Y. 1995) ........................................... 17

GMAC Commercial Credit, LLC v. Dillard Dept. Stores, Inc., 198 F.R.D. 402
    (S.D.N.Y. 2001) ............................................................................................................... 16

Jockey Int'l, Inc. v. M/V "Leverkusen Express", 217 F. Supp. 2d 447
    (S.D.N.Y. 2002) .................................................................................. 10n., 12, 13, 14

Jones v. Weibrecht, 901 F.2d 17 (2d Cir. 1990) ......................................................................... 13

Lamberton v. FDIC, 141 F.2d 95 (3d Cir. 1944) ....................................................................... 21

Learonal, Inc. v. ACL Electronics, Inc., 1997 WL 458767 (S.D.N.Y.
    Aug. 11, 1997) ................................................................................................................. 18

Lewis v. Rahman, 147 F. Supp. 2d 225 (S.D.N.Y. 2001) ........................................................... 11

Lurie v. Norwegian Cruise Lines, Ltd., 305 F. Supp. 2d 352 (S.D.N.Y. 2004) ......................... 15

M/S Breman v. Zapata Off-Shore Co., 407 U.S. 1 (1972) ............................................. 12, 13, 14

Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co., 2004 WL 421793
    (S.D.N.Y. March 5, 2004) ........................................................................................ passim

Motise v. Am. Online, Inc., 346 F. Supp. 2d 563 (S.D.N.Y. 2004) ........................................... 17

New Moon Shipping Co., Ltd. v. Man B & W Diesel AG, 121 F.3d 24
(2d Cir. 1997) ......................................................................................... 13

Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974) ....................................... 14

Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 (1988) ................................... 17

Stonehenge, Ltd. v. Garcia, 989 F. Supp. 539 (S.D.N.Y. 1998) ..................... 17

Strategic Mktg. & Communications, Inc. v. Kmart Corp., 41 F. Supp. 2d 268
(S.D.N.Y. 1998) ................................................................................. 12, 13

Tufano v. One Toms Point Lane Corp., 64 F.Supp.2d 119 (E.D.N.Y. 1999) ................................ 2

Varabiev v. Bank Leumile Israel (Switzerland), 2004 WL 936804 (S.D.N.Y.
Apr. 30, 2004) ...................................................................................... 14

Weiner v. Bank of King of Prussia, 358 F. Supp. 684 (E.D. Pa. 1973) ........................................ 21

Weingard v. Telepathy, Inc., 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) ............ 10n., 12, 15, 16

Weiss v. Columbia Pictures Television, Inc., 801 F. Supp. 1276 (S.D.N.Y. 1992) ......... 17, 18, 19

Zurich Ins. Co. v. Prime, Inc., 419 F. Supp. 384 (S.D.N.Y. 2005) ......................................... 16

## Statutes

28 U.S.C. § 1404(a) ...................................................................... 1, 16, 17, 18

28 U.S.C. § 1406(a) ................................................................................. 1, 10

Fed. R. Civ. P. 12(b)(3) ........................................................................... 1, 10

Fed. R. Civ. P. 12(b)(6) ......................................................................... passim

## PRELIMINARY STATEMENT

This is an action for breach of contract and other related claims filed by Plaintiff, Pegasus Integrated Consulting, Corp. ("Plaintiff" or "Pegasus") against Defendant, rue21, Inc. ("Defendant" or "rue21") to recover sums Pegasus claims it is owed pursuant to certain rue21 purchase orders (the "Purchase Orders"). As set forth below, this action is brought by the wrong plaintiff in the wrong court.

Although Pegasus failed to attach them to the Complaint, the Purchase Orders under which Pegasus seeks recovery each contain a forum selection clause mandating that this action be filed in the Western District of Pennsylvania or in Pennsylvania state court in Allegheny County, Pennsylvania. Because Pegasus filed suit outside of the mandatory forum, rue21 hereby moves this Court to dismiss the Complaint for improper venue pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), or, alternatively, pursuant to 28 U.S.C. § 1406(a). Alternatively, if the Court does not dismiss the Complaint for improper venue, rue21 moves this Court to transfer this case to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

If this Court declines to dismiss or transfer this case for improper venue, rue21 alternatively moves this Court to dismiss this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted because Pegasus is not the vendor with respect to the subject Purchase Orders and has no right to sue with respect to the transactions at issue. Plaintiff tacitly admits this is its Complaint, alleging that it conducted business through "its affiliated companies, Kaotic [sic] Love and Hung Tat." Complaint at ¶ 6. As discussed below, Plaintiff has attempted to dismiss these companies as "trade names." In

fact, the vendor on most of the orders, Khaotik, Inc. ("Khaotik") is a separate corporation and the other vendor at issue, Hung Tat Industrial Development Co. ("Hung Tat"), also repeatedly dealt with rue21 as an entity.

In evaluating an objection to venue, it is proper for the court to consider materials that go beyond the original pleadings. Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co., 2004 WL 421793, at *2 (S.D.N.Y. March 5, 2004). On a motion to dismiss under Rule 12(b)(6), the Court may consider facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference and any matters of which judicial notice may be taken. See Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). A plaintiff may not avoid a court's consideration of pertinent documents by failing to append the documents to the complaint. See Tufano v. One Toms Point Lane Corp., 64 F.Supp.2d 119, 123-124 (E.D.N.Y. 1999) ("Court may consider documents annexed to the movant's papers which, although not annexed to the complaint, plaintiff either had in his possession or had knowledge of and upon which he relied in bringing the suit."). Here, Plaintiff admits that the Purchase Orders are binding contracts, see Complaint or ¶¶ 22, 29 and 73, but fails to attach these Purchase Orders to the Complaint.

In support of this motion, rue21 submits the affidavit of Keith McDonough, Senior Vice President and Chief Financial Officer of rue21, ("McDonough Aff."). rue21 also submits the affidavit of Carlos Gomez, a shareholder of Khaotik, the actual vendor with respect to most of the Purchase Orders at issue ("Gomez Aff."), which states that Khaotik was fully aware of and agreed to the terms and conditions of the Purchase Orders and the Vendor Compliance Manual, each of which contains the forum selection clause. This affidavit squarely refutes Plaintiff's position. rue21 also submits an attorney affidavit of Andrew L. Morrison, Esq. ("Morrison

Aff."), which attaches as Exhibit A thereto the April 30, 2007 letter submitted to the Court by

Plaintiff's counsel, Tony C. Chang, during the Court's pre-motion conference process

("Plaintiff's April 30 Letter").  rue21 also has included with its motion papers a copy of the

Complaint for the Court's reference.  See, Morrison Aff. Ex. B.

If necessary, against a proper party and in a court mandated by the forum selection

clause, rue21 will show that it has no liability with respect to the transactions at issue and,

indeed, that rue21 has been damaged by repeated and critical Vendor failures to perform under

these Purchase Orders at crucial times in rue21's business, including the essential "back to

school" and Christmas buying seasons.  However, rue21 respectfully submits that it should not

be required to defend against baseless claims brought by the wrong party and brought in

violation of the forum selection clause.

## BACKGROUND FACTS

### The Parties

Defendant rue21 is a clothing retailer incorporated in the Commonwealth of

Pennsylvania with its principal place of business in Warrendale, Pennsylvania, near Pittsburgh,

in the Western District of Pennsylvania.  McDonough Aff. at ¶ 3.  rue21 currently owns and

operates over 290 retail clothing stores.  Id.  at ¶ 4.  Plaintiff Pegasus alleges that it is a New

York corporation with its offices in New York, New York.  Complaint at ¶ 1.

### The Purchase Orders

rue21 purchases goods from various vendors for resale to consumers.  McDonough Aff.

at ¶ 4.  rue21 virtually always purchases goods pursuant to a standard form of purchase order (the

"Purchase Order") and has transacted with hundreds of different vendors pursuant to this standard form of Purchase Order. Id. The face of the Purchase Order specifies, conspicuously, in all capital letters and in bold print, that the "Vendor" is the "Seller," and that the applicable terms and conditions on the face and reverse side of the Purchase Order ("Terms and Conditions") and rue21's Vendor Compliance Manual are part of the Purchase Order:

**ATTENTION VENDOR ("SELLER")**

**CAREFULLY READ THE FACE AND REVERSE SIDES OF THIS PURCHASE ORDER AND THE rue21 VENDOR COMPLIANCE MANUAL AS AMENDED. THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDES HEREOF AND THE VENDOR GUIDELINES EXPLAINED IN THE rue21 VENDOR COMPLIANCE MANUAL ARE PART OF THIS PURCHASE ORDER. ACCEPTANCE OF THIS OFFER TO PURCHASE IS EXPRESSLY LIMITED TO ITS TERMS. SHIPMENT OF THE MERCHANDISE OR PERFORMANCE OF THE SERVICES ORDERED WILL CONSTITUTE ACCEPTANCE OF THIS OFFER. DO NOT SHIP THE MERCHANDISE OR PERFORM THE SERVICES ORDERED UNLESS THIS OFFER IS ACCEPTABLE.**

Id. at ¶ 5; McDonough Aff. Ex. A. The Vendor Compliance Manual also includes a copy of the Purchase Order, including the Terms and Conditions. Id. at ¶ 6. See Vendor Compliance Manual at pp. A-1, D-1, D-2; McDonough Aff. Ex. B.

Paragraph 16 of the Terms and Conditions is entitled, in all capital letters and underlined, "APPLICABLE LAW, JURISDICTION, VENUE, SERVICE OF PROCESS AND TIME FOR SUIT." Id. at ¶ 7. The first paragraph of Paragraph 16 specifies that Pennsylvania law applies to any claim "whatsoever" arising under or related to the Agreement:

> This Agreement, and any claim by Seller or Buyer for breach of contract, for any alleged tortious conduct or any claim whatsoever brought in law or in equity arising under or related to this

- 4 -

Agreement shall be governed by and construed under the laws of
the Commonwealth of Pennsylvania, United States of America,
notwithstanding delivery or resale of the merchandise supplied or
services performed other than in Pennsylvania.

Id. Paragraph 16 then sets forth a mandatory forum selection clause that states that "any" suit

filed by Seller "must" be filed in the Western District of Pennsylvania or in state court in

Allegheny County, Pennsylvania:

Any suit, action or proceeding ("Suit"), if brought by Seller, must
be brought in the United States District Court for the Western
District of Pennsylvania or any proper Pennsylvania State Court
located in Allegheny County, Pennsylvania.

Id. (emphasis added).  Further, Paragraph 16 provides that rue21 may bring suit in the Western

District of Pennsylvania or Allegheny County, Pennsylvania and that "Seller hereby irrevocably

waives, to the fullest extent permitted by law, any objection which Seller may have now or

hereafter to the laying of the venue or any objection based on forum non conveniens, or based on

the grounds of jurisdiction with respect to any such suit and irrevocably submits generally and

unconditionally to the jurisdiction of any such Court in any such Suit."  Id.

Paragraph 15 of the Terms and Conditions contains a provision that prohibits the Seller

from assigning its rights and interest under the Agreement without Buyer's prior written consent:

ASSIGNMENT; WAIVER:  Seller shall not assign or delegate all
or any portion of its rights, interest, liabilities or obligations under
this Agreement, whether done orally, in writing or by operation of
law, to any person, firm, corporation or governmental agency,
without Buyer's prior written consent.  Except as provided in this
paragraph, this Agreement shall be binding upon and inure to the
benefit of the successors and assigns of the parties.  Buyer's waiver
of any breach of any term, condition or provision of this
Agreement shall not be deemed a waiver of any subsequent breach

of the same or any other term, condition or provision of this
Agreement.

Id. at ¶ 8.

## The Vendors

Although, as noted above, the Complaint admits that the Purchase Orders are binding

contracts, the Complaint does not specify the transactions at issue and does not attach the

Purchase Orders that govern these transactions. However, rue21 avers that the transactions at

issue fall into three categories and involve two different vendors, and that the standard rue21

Purchase Order and the referenced and incorporated Terms and Conditions and Vendor

Compliance Manual are the governing documents for each of the transactions at issue. Id. at

¶¶ 9-14.   As is clear from the face of the applicable Purchase Orders, Pegasus was not the

vendor in any of the transactions upon which it has filed suit.  Instead, as stated in the applicable

Purchase Orders, the vendor for the first group of transactions was Hung Tat and the vendor for

the second and third group of transactions was Khaotik.  Id.

rue21 avers that the first group of transactions upon which Pegasus has filed suit involves

the following Hung Tat Purchase Orders:  1027, 2158, 2160, 2162 and 2384.  McDonough Aff.

at ¶ 12; McDonough Aff. Ex. C.  These Purchase Orders show Hung Tat as the Vendor, as its

name is clearly shown in the top left corner in the section marked "To Vendor" on the front page

of the Purchase Orders.  Id.  On its face, each of these Purchase Orders also conspicuously

references and incorporates the Terms and Conditions and the Vendor Compliance Manual.  Id.

rue21 avers that the second group of transactions upon which Pegasus has filed suit

involves the following Khaotik Purchase Orders: 2190 and 2636.  Id. at ¶ 13; McDonough Aff.

Ex. D.  These Purchase Orders show Khaotik as the Vendor, as its name is clearly shown in the

top left corner in the section marked "To Vendor" on the front page of the Purchase Orders.  Id.
On its face, each of these Purchase Orders also conspicuously references and incorporates the
Terms and Conditions and the Vendor Compliance Manual.  Id.   The third group of transactions
upon which Pegasus has filed suit involves certain cancelled Purchase Orders.  McDonough Aff.
at ¶ 14.  The Complaint does not identify the cancelled Purchase Orders at issue.  However,
rue21 avers that Khaotik was the Vendor on each of these Purchase Orders and that each of these
Purchase Orders, on its face, also references and incorporates the Terms and Conditions and the
Vendor Compliance Manual.  Id.  Notably, Plaintiff sent a demand letter prior to filing suit and
did not even include a demand as to any cancelled orders.  Id.

### Plaintiff's Challenge To The Forum Selection Clause

        Counsel for Plaintiff has indicated to the Court that Plaintiff's basis for challenging the
forum selection clause is that only the back of the Purchase Order was received and that the
forum selection clause contained in the Terms and Conditions therefore is not binding.  See
Plaintiff's April 30 Letter.  Plaintiff concedes that the front of the Purchase Orders was received,
see id., and the front of each of the Purchase Orders explicitly and conspicuously incorporates
the Terms and Conditions and the Vendor Compliance Manual.  As to the Khaotik Purchase
Orders, Plaintiff's position also is refuted by Khaotik, the actual Vendor.  As stated in the Carlos
Gomez affidavit, Khaotik admits that, for each of the Khaotik Purchase Orders, Khaotik was
fully aware of and bound by the Terms and Conditions and the Vendor Compliance Manual:

>        6.      In connection with these Purchase Orders, Khaotik received and reviewed
> the Vendor Compliance Manual referenced by and incorporated into the Purchase
> Order. The Vendor Compliance Manual contains the Vendor Compliance
> Guidelines, including another copy of the Purchase Order (including the Terms
> and Conditions).

7.    For each of these Purchase Orders, Khaotik was fully aware of the terms of the Purchase Order, including the incorporated Vendor Compliance Manual and Terms and Conditions, and agreed that the Purchase Order, including the incorporated Vendor Compliance Manual and the Terms and Conditions, was binding upon Khaotik.

8.    For many of these Purchase Orders, a two sided copy of the Purchase Order was provided to Khaotik, although Khaotik was aware and agreed that the Vendor Compliance Manual and the Terms and Conditions were a binding part of each of the each of the Purchase Orders whether or not a two-sided copy was provided.

Gomez Aff. at ¶¶ 6-8.

As to Hung Tat, Frank Chih was a representative and possibly an owner and/or employee of Hung Tat (and Khaotik). McDonough Aff. at ¶ 15. Mr. Chih was fully familiar with the Purchase Order, the Terms and Conditions, and the Vendor Compliance Manual (which also contains the Purchase Order), and, in fact, Mr. Chih executed a Vendor Compliance Agreement containing the Vendor Compliance Manual on behalf of another Vendor with which rue21 has done business, Polygon Ventures. Id.; McDonough Aff. Ex. E. In dealing with Mr. Chih over the years, in many instances, Purchase Orders were written in person with Mr. Chih at rue21's Warrendale, Pennsylvania headquarters and both sides of the completed Purchase Orders provided by rue21 to Mr. Chih at that time. McDonough Aff. at ¶ 15.

rue21 regularly communicated with Mr. Chih concerning the Vendor Compliance Manual. For example, the Vendor Compliance Manual contained provisions that set Non-Compliance chargeback amounts for late delivery, quality problems, shipments of incorrect amounts and the like. Id. at ¶ 16. Such issues arose numerous times as a result of non-performance by entities with which Mr. Chih was associated, including Hung Tat and Khaotik, and rue21 dealt with Mr. Chih on numerous occasions concerning the Non-Compliance chargeback provisions of the Vendor Compliance Manual. Id. Mr. Chih received numerous

Non-Compliance Chargeback Forms from the Vendor Compliance Manual on behalf of entities he represented.  Id.

In addition, on many occasions, rue21 accommodated Mr. Chih's requests on behalf of the entities he represented to reduce the Non-Compliance chargebacks required by the Vendor Compliance Manual pursuant to agreed allowances.  Id. at ¶ 17.  rue21 also at times advanced payments to these entities that were not then due.  Id.  In addition, the Vendor Compliance Manual contains numerous requirements for Vendors who deal with rue21 regarding goods sold by a Vendor to rue21, and rue21 regularly dealt on these issues with Mr. Chih with respect to the entities he was representing, including Hung Tat and Khaotik.  Id. at ¶ 18.

rue21's records and the persons at rue21 principally involved in the transactions at issue are primarily located at its Warrandale, Pennsylvania headquarters in the Western District of Pennsylvania.  Id. at ¶¶ 3, 19.  Khaotik is a California corporation with its principal place of business in Los Angeles, California.  Gomez Aff. at ¶ 1.

## ARGUMENT

### POINT I

**THIS ACTION SHOULD BE DISMISSED BECAUSE VENUE
IN THE SOUTHERN DISTRICT OF NEW YORK IS IMPROPER**

The Purchase Orders upon which Pegasus has filed this breach of contract action each contain a valid, enforceable forum selection clause.  Courts in this circuit have recognized a Court's power to dismiss a complaint when the court is not an appropriate forum by reason of a valid and enforceable forum selection clause.  Mercury, 2004 WL 421793 at *8.  Accordingly,

the Complaint should be dismissed in its entirety for improper venue pursuant to Rule 12(b)(3) or 12(b)(6), or alternatively, pursuant to 28 U.S.C. § 1406(a).[1]

### A.    Plaintiff's Challenge To The Forum Selection Clause Is Baseless

As Plaintiff's counsel advised the Court in Plaintiff's April 30 Letter, Plaintiff challenges the forum selection clause on the basis that the clause appears on the back of the Purchase Orders and that only the front of the Purchase Order was received.  This argument is refuted by the front of the Purchase Order which states in bold and conspicuous language that the Terms and Conditions on the face and reverse side of the Purchase Order and the Vendor Compliance Manual are part of the contract. Plaintiff admits in Plaintiff's April 30 Letter that the front of the Purchase Orders was received.  Plaintiff also alleges repeatedly in the Complaint that the Purchase Orders are binding contracts.  Complaint, at ¶¶ 22, 29, 73.  Yet Plaintiff asks that it be permitted to pick and choose which parts of this binding contract should be enforced.

As to the Khaotik Purchase Orders, which constitute most of the Purchase Orders upon which suit has been brought, Plaintiff's position also is flatly refuted by Khaotik, the actual Vendor for most of the Purchase Orders at issue.  The Gomez affidavit is explicit that Khaotik was fully familiar with the Terms and Conditions and the Vendor Compliance manual, that

---

1    The Second Circuit has not definitively ruled on which procedural mechanism should be used to dismiss a complaint for improper venue because of an enforceable forum selection clause. Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co., 2004 WL 421793, at *2 (S.D.N.Y. March 5, 2004) ("courts of this circuit have made clear that courts do possess the ability under either Rule 12(b)(3) or § 1406(a) to dismiss a case upon a motion that a forum selection clause renders venue in a particular court improper"); Jockey Int'l, Inc. v. M/V "Leverkusen Express", 217 F. Supp. 2d 447, 450 (S.D.N.Y. 2002) (commenting that "[t]he Second Circuit has not decided what rule governs dismissals based on a forum selection clause" and noting that numerous courts have utilized Rule 12(b)(3) or 12(b)(6)); Weingard v. Telepathy, Inc., 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005).

Khaotik received both sides of the Purchase Order in many instances and that, whether Khaotik received both sides or not, it was aware and agreed that the Terms and Conditions and the Vendor Compliance Manual were a binding part of each Purchase Order. Given that the actual Vendor has so testified, Plaintiff simply has no argument as to the Khaotik Purchase orders.

As to the Hung Tat Purchase Orders, Plaintiff's position is refuted both by the face of the Purchase Orders and the history of dealings between rue21 and Mr. Chih described above. The Purchase Order and Vendor Compliance Manual were the governing documents in repeated transactions between merchants. Mr. Chih even had previously signed the Vendor Compliance Agreement. As the McDonough affidavit explains in detail, and as Mr. Chih surely could not dispute, rue21 and Mr. Chih dealt with these core documents on an ongoing basis. Retailers such as rue21 could not conduct business effectively if Vendors could so casually cast aside important and basic terms and conditions of Purchase Orders as Plaintiff, which is not even a Vendor, seeks to do here.

It is a boilerplate contract principle that "a paper referred to in a written instrument and sufficiently described may be made part of the instrument as if incorporated into the body of it." Lewis v. Rahman, 147 F. Supp. 2d 225, 233 (S.D.N.Y. 2001); see also Aceros Prefabricados, S.A. v. Tradearbed, Inc., 282 F.3d 92 (2d Cir. 2002). Numerous Purchase Orders specifically alerted Plaintiff to "**CAREFULLY READ THE FACE AND REVERSE SIDE OF THE PURCHASE ORDER AND THE RUE21 VENDOR COMPLIANCE MANUAL**" because they are "**PART OF THE PURCHASE ORDER**." Especially given Mr. Chih's long history of working with the Purchase Order and Vendor Compliance Manual, Plaintiff's attempt to avoid the bold, conspicuous language of rue21's numerous Purchase Orders is disingenuous.

Plaintiff's April 30 Letter indicates that this is the only basis for its challenge to the forum selection clause. Plaintiff makes no challenge to the enforceability of the clause. Any such challenge would be unfounded, as set forth next.

## B.    The Forum Selection Clause Is Mandatory

The Purchase Orders governing the transactions at issue contain a mandatory forum selection clause requiring that any action by Seller "<u>must</u> be brought in the United States District Court for the Western District of Pennsylvania or any proper State Court located in Allegheny County, Pennsylvania." Affidavit at ¶ 8 (emphasis added). Where, as here, a forum selection clause is mandatory on its face, it is the intent of the parties to make jurisdiction exclusive. <u>Weingard v. Telepathy, Inc.</u>, 2005 WL 2990645, at *3; <u>Jockey Int'l, Inc. v. M/V "Leverkusen Express"</u>, 217 F. Supp. 2d 447, 451 (S.D.N.Y. 2002) ("A forum selection clause is effective if the language delineating the choice of forum is 'mandatory rather than permissive,' and makes the chosen jurisdiction exclusive."). Accordingly, venue is improper in this Court.

## C.    The Forum Selection Clause Is Valid And Enforceable

In the Second Circuit, federal law applies in determining the enforceability of forum selection clauses in diversity actions. <u>Strategic Mktg. & Communications, Inc. v. Kmart Corp.</u>, 41 F. Supp. 2d 268, 271 (S.D.N.Y. 1998) (commenting that precedent is clear that federal law governs the enforcement of forum selection clauses in diversity actions). The United States Supreme Court has unequivocally held that forum selection clauses are "prima facie valid." <u>M/S Breman v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15 (1972). In <u>Bremen</u>, the Court held that forum selection clauses should not be set aside unless the party challenging such a clause can "clearly

show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." Bremen, 407 U.S. at 15.

The Bremen holding applies with equal force to cases brought pursuant to diversity jurisdiction. Mercury, 2004 WL 421793, at *3 (citing Jones v. Weibrecht, 901 F.2d 17, 18 (2d Cir. 1990) ("[The Bremen] rule has been extended in this and other circuits to diversity and other non-admiralty cases.")). Indeed, courts in the Second Circuit have developed a strong policy of honoring forum selection clauses. Mercury, 2004 WL 421793, at *3 (citing Strategic Mktg. & Communications, Inc. v. Kmart Corp., 41 F. Supp. 2d 268, 270 (S.D.N.Y. 1998)). As the Court explained in Mercury:

> Underlying this policy is an understanding that forum selection clauses carry an economic benefit to at least one of the parties that is typically reflected in the overall economics of the contract. As such, these clauses are bargained for terms of the contract that deserve to be honored by courts.

Mercury, 2004 WL 421793, at *3 (citing Carnival Cruise Lines v. Shute, 499 U.S. 585, 594 (1991)).

Because forum selection clauses are presumptively valid, the party seeking to avoid enforcement bears "the heavy burden of making a 'strong showing' in order to overcome the presumption of validity from which these clauses benefit." Mercury, 2004 WL 421793, at *3 (citing New Moon Shipping Co., Ltd. v. Man B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997)). To overcome this heavy burden, the party must establish that enforcement would be unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching. Citibank, N.A. v. Collins, 1991 WL 64174, at *1 (S.D.N.Y. Apr. 15, 1991) (citing Bremen, 407 U.S. at 12-13); Jockey Int'l, Inc. v. M/V "Leverkusen Express", 217 F. Supp. 2d 447, 450

(S.D.N.Y. 2002). Otherwise, a forum selection clause may only be invalidated if the plaintiff can prove that the forum selection clause contravenes public policy or that the law of the forum state is fundamentally unfair. Jockey, 217 F. Supp. 2d at 451. Plaintiff cannot meet this heavy burden. Indeed, Plaintiff has not alleged, nor could it establish, any facts to even attempt to satisfy this rigorous standard.

To establish that a forum selection clause is "unreasonable or unjust," a plaintiff must prove "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." Bremen, 407 U.S. at 18; Bense v. Interstate Battery Sys. of Am., Inc., 683 F.2d 718, 722 (2d Cir. 1982). Mercury, 2004 WL 421793, at *4; Varabiev v. Bank Leumile Israel (Switzerland), 2004 WL 936804, at *3 (S.D.N.Y. Apr. 30, 2004). Plaintiff does not and cannot allege this here. Likewise, Plaintiff does not and cannot allege that the forum selection clause contravenes any public policy or that the laws of Pennsylvania are fundamentally unfair. Plaintiff also does not and cannot allege that the clause can be avoided for fraud, especially given that a forum selection clause is unenforceable for fraud only "if the inclusion of that clause in the contract was the product of fraud or coercion." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974); Composite Holdings v. Westinghouse Electric Corp., 992 F. Supp. 367, 369 (S.D.N.Y. 1998) (holding that a forum selection clause will stand against a claim for fraud unless the fraud was directed to the forum selection clause itself).

### D.    The Forum Selection Clause Applies To The Entire Complaint

By its terms, the forum selection clause applies to "[a]ny suit, action or proceeding, if brought by Seller…." Affidavit at ¶ 8 (emphasis added). Thus, the entire action is subject to

- 14 -

dismissal. Furthermore, Plaintiff's April 30 Letter describes the Complaint as involving "breach of contract and other related claims." Thus, the forum selection clause applies to all of the claims in the Complaint.

Courts in the Second Circuit routinely hold that "a contractually-based forum selection clause will also encompass any claims that ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract or if the claims involve the same operative facts as a parallel claim for breach of contract." Direct Mail Prod. Servs. Ltd. v. MBNA Corp., 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (internal citations omitted); Weingard v. Telepathy, Inc., 2005 WL 2990645, at *4 (S.D.N.Y. Nov. 7, 2005) ("A forum selection clause cannot 'be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship.'") (quoting Anselmo v. Univision Station Group, Inc., 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993)). See also Lurie v. Norwegian Cruise Lines, Ltd., 305 F. Supp. 2d 352 (S.D.N.Y. 2004); Bense v. Interstate Battery System of America, Inc., 683 F.2d 718 (2d Cir. 1982). Moreover, the forum selection clause was drafted to be read in conjunction with the choice of law clause in the same provision and which provides that Pennsylvania law applies as to any claim "whatsoever." McDonough Aff. at ¶ 7.

## E.    This Case Should Be Dismissed In Its Entirety, Not Transferred

The Court should dismiss the Complaint in its entirety, and not simply transfer this action to the Western District of Pennsylvania. Dismissal is appropriate where there is a mandatory

forum selection clause. <u>Mercury West A.G., Inc. v. RJ Reynolds Tobacco Co.</u>, 2004 WL

421793, *8 (S.D.N.Y. March 5, 2004).

In dismissing rather than transferring cases, courts in this jurisdiction also have focused

on forum selection clauses that permit parties to bring suit in either federal or state courts of a

foreign jurisdiction. <u>Bense</u>, 683 F.2d 718 (affirming order dismissing case for improper venue

where the forum selection clause designated Dallas County, Texas); <u>Zurich Ins. Co. v. Prime,</u>

<u>Inc.</u>, 419 F. Supp. 2d 384, 387 (S.D.N.Y. 2005) (dismissing case for improper venue where the

forum selection clause designated Greene County, Missouri); <u>Weingard</u>, 2005 WL 2990645, at

*6 (<u>citing</u> <u>GMAC Commercial Credit, LLC v. Dillard Dept. Stores, Inc.</u>, 198 F.R.D. 402, 409

(S.D.N.Y. 2001)). The forum selection clause in this case permits filing either in the Western

District of Pennsylvania or in a proper state court in Allegheny County, Pennsylvania.

McDonough Aff. at ¶ 7. For this reason, dismissal of the present case is warranted because

transfer to the federal district court would decide this filing question, contrary to the terms of the

Purchase Order.

## POINT II

### ALTERNATIVELY, THIS ACTION SHOULD BE
### TRANSFERRED FOR IMPROPER VENUE

Should the Court decline to dismiss the Complaint for improper venue, rue21 requests

that the Court transfer this lawsuit pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)") to the

Western District of Pennsylvania, an agreed venue under the forum selection clause of the

Purchase Orders. Section 1404(a) provides that: "For the convenience of parties and witnesses,

in the interest of justice, a district court may transfer any civil action to any other district where it

might have been brought." As will be shown below, application of the Section 1404(a) factors

- 16 -

alternatively supports transfer of this action to the United States District Court for the Western

District of Pennsylvania.

### A.    The Forum Selection Clause Is Dispositive Of, Or, At A Minimum, Central To, The Transfer Analysis Under Section 1404(a)

For all of the reasons discussed in detail above, the forum selection clause is valid and

should be enforced.  Courts in this circuit have found the existence of a forum selection clause to

be dispositive with respect to the transfer analysis under Section 1404(a).  See, e.g., Elite

Parfums, Ltd. v. Rivera, 872 F. Supp. 1269, 1272 (S.D.N.Y. 1995) (citing Bense 683 F.2d at

721-22); Motise v. Am. Online, Inc., 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004)).

Even if not deemed dispositive, the presence of a forum selection clause is, at a

minimum, a central factor in the Section 1404(a) analysis.  In Stewart Org., Inc. v. Ricoh Corp.,

487 U.S. 22, 29 (1988), the Supreme Court emphasized the importance of a forum selection

clause to the Section 1404(a) analysis:

> A motion to transfer under § 1404(a) thus calls on the district court
> to weigh in the balance a number of case-specific factors. *The
> presence of a forum-selection clause such as the parties entered
> into in this case will be a significant factor that figures centrally in
> the District Court's calculu*s.  (emphasis added).

The Supreme Court's reasoning has been applied in this Court.  Where, as here, there is a

valid forum selection provision, a party resisting transfer to a forum designated in its contract

must demonstrate "exceptional facts" indicating that transfer would be inappropriate.

Stonehenge, Ltd. v. Garcia, 989 F. Supp. 539, 541 (S.D.N.Y. 1998); Weiss v. Columbia Pictures

Television, Inc., 801 F. Supp. 1276, 1278-79 (S.D.N.Y. 1992).

**B.    Numerous Other Factors Also Support Transfer To The Western District Of Pennsylvania Pursuant To Section 1404(a)**

Pegasus cannot demonstrate the existence of such "exceptional facts" to overcome this heavy presumption in favor of the forum selection clause.  Indeed, although this motion can be disposed of solely by applying the forum selection clause, a review of some of the other factors commonly considered in the context of a motion to transfer under Section 1404(a) also demonstrates that the parties' choice of forum in the forum selection clause is correct under any analysis, and that, if not dismissed, this action should be transferred to the Western District of Pennsylvania.

rue21 has its principal place of business in the Western District of Pennsylvania.  rue21's records and the witnesses with respect to the transactions at issue are primarily located in the Western District of Pennsylvania. McDonough Aff. at ¶ 19.  As noted, the Purchase Orders also contain an express choice-of-law provision providing that Pennsylvania law governs any claims "whatsoever."  Id. at ¶ 7.  As such, the claims brought in the Complaint all would be governed by Pennsylvania law and should be presented in a Pennsylvania court.  Learonal, Inc. v. ACL Electronics, Inc., 1997 WL 458767, at *7 (S.D.N.Y. Aug. 11, 1997).

Any claimed financial burden upon Pegasus of litigating this matter in Pennsylvania is not a decisive factor in determining where the matter should be litigated.  See Carnival Cruise Lines Inc. v. Shute, 499 U.S. 585, at 594-95 (1991) (enforcing a forum selection clause despite the lower court's factual finding that evidence showed plaintiffs were physically and financially incapable of litigating in the agreed upon forum); Weiss, 801 F. Supp. at 1279 ("Mere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum.") (citing Bense, 683 F.2d at 720).  As shown above, it

would be burdensome for rue21 to litigate this matter in New York and the forum selection clause resolves any issue of competing burdens. Further, by the terms of the Purchase Orders, the Seller has already waived its right to assert that venue in Allegheny County, Pennsylvania is inconvenient. Citibank, 1991 WL 64174, at *3 (noting the plain language of the forum selection clause indicates the plaintiff has waived her right to contest the convenience of the forum).

Additionally, while courts traditionally give consideration to the plaintiff's choice of forum, such consideration is not bestowed upon a plaintiff where there is a forum selection clause. Weiss v. Columbia Pictures Television, Inc., 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992). Moreover, most of the Purchase Orders are between rue21, located in Pennsylvania, and Khaotik, which is located in California and which agrees the forum selection clause is valid and binding. Having such claim proceed in New York would be anomalous.

Accordingly, if not dismissed, this Court should transfer the case to the Western District of Pennsylvania.

## POINT III

### ALTERNATIVELY, THIS ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

As shown above, this action should be dismissed or, alternatively, transferred to the United States District Court for the Western District of Pennsylvania. Alternatively, this action should be dismissed by the Court under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because Pegasus is not the Vendor with respect to the subject Purchase Orders and has no right to sue with respect to the transactions at issue. If not dismissed on the

basis of the forum selection clause, such alternative dismissal would be proper in this Court or by the Court in the Western District of Pennsylvania if this action is transferred.

This action is based upon Purchase Orders that Pegasus acknowledges are "valid and binding contracts." <u>See</u> Complaint at ¶¶ 22, 29, 73. Yet, Pegasus conspicuously fails to attach or even identify these Purchase Orders. rue21 <u>has</u> provided these Purchase Orders to the Court and thereby revealed the reasons that Pegasus chose not to do so. These Purchase Orders show clearly and unambiguously not only that this action was not filed in the proper Court, but also that Pegasus is not a proper plaintiff in <u>any</u> Court.

As shown above, each of these Purchase Orders sets forth a contract between a "Vendor" as "Seller" and rue21 as "Buyer." McDonough Aff. at ¶¶ 9-14. For each Purchase Order, the Vendor is identified in the top left of the front side of the Purchase Order section of the Purchase Order marked "To Vendor." <u>Id.</u> For the transactions at issue here, most of the Purchase Orders identify Khaotik as the "Vendor" and the remaining Purchase Orders identify Hung Tat as the "Vendor." <u>Id.</u> <u>None</u> of these Purchase Orders identifies Pegasus as the Vendor. <u>Id.</u>

Furthermore, Paragraph 15 of each Purchase Order's Terms and Conditions states that Seller's rights and interest under the Agreement may not be assigned without Buyer's prior written consent:

> <u>ASSIGNMENT; WAIVER:</u> Seller shall not assign or delegate all or any portion of its rights, interest, liabilities or obligations under this Agreement, whether done orally, in writing or by operation of law, to any person, firm, corporation or governmental agency, without Buyer's prior written consent. Except as provided in this paragraph, this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties. Buyer's waiver of any breach of any term, condition or provision of this Agreement shall not be deemed a waiver of any subsequent breach

of the same or any other term, condition or provision of this
Agreement.

Id. at ¶ 8.

Now that the actual Purchase Orders upon which Pegasus purports to bring suit have been

provided to the Court, it is clear that Pegasus is not a proper plaintiff. By the express terms of

these Purchase Orders, Pegasus is not the Vendor. Plaintiff tacitly admits this, alleging, in

Paragraph 6 of the Complaint, that "Pegasus, through its affiliated companies, Kaotic [sic] Love

and Hung Tat, has conducted business with Defendant…" Complaint at ¶ 6. Nor does Pegasus

allege any assignment of the actual Vendor's rights or interest under any of these Purchase

Orders, much less that rue21 gave its "prior written consent" to any such alleged assignment as

required by Paragraph 15 of the Terms and Conditions. This is patently insufficient to support

Pegasus' claimed right to sue.

Under applicable Pennsylvania law, as elsewhere, of course, a plaintiff who is a stranger

to a contract has no right to enforce the rights and remedies created by that contract. See, e.g.,

Lamberton v. FDIC, 141 F.2d 95, 97 (3d Cir. 1944) (plaintiff had no right to sue when he was

not a party to the contract); Weiner v. Bank of King of Prussia, 358 F. Supp. 684, 694 (E.D. Pa.

1973) (plaintiff had no right to challenge lending practices of financial institutions with which

plaintiff had no contractual relationship); Carson/Depaul/Ramos v. The Phillies, 2006 WL

2988224 *2 (Pa. Cm. Pl. Oct. 17, 2006). This case therefore alternatively should be dismissed

under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Plaintiff's position as stated in Plaintiff's April 30 Letter is that "Pegasus operated under

trade names clearly known to the Defendant." As to the Khaotik Purchase Orders, that simply is

not true. As the Gomez affidavit states, Khaotik, Inc. is a California corporation, not a trade

name. Gomez Aff. at ¶ 1. As to the Hung Tat Purchase Orders, Hung Tat is the name of the entity that appears as the Vendor on the Hung Tat Purchase Orders, Hung Tat dealt with rue21 as an entity and Hung Tat agreed that its rights and interests under the Hung Tat Purchase Orders could not be assigned.

In sum, Pegasus is not a proper party in this case. If this action is not dismissed because it was brought in violation of the agreed forum selection provision, rue21 respectfully submits that it alternatively should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons set forth in detail above, Defendant rue21 respectfully requests the Court to: (1) dismiss Plaintiff Pegasus' Complaint in view of the forum selection clause contained in the Purchase Orders at issue; or, in the alternative, (2) transfer this lawsuit to the United States District Court for the Western District of Pennsylvania; or, in the alternative, (3) dismiss the complaint for failure to state a claim upon which relief may be granted; and (4) award such further relief as the Court deems just and proper.

Dated:    New York, New York
           May 30, 2007

REED SMITH LLP

By:_____
    Andrew L. Morrison (AM 1071)
    Zoe F. Feinberg (ZF 7709)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400

Michael E. Lowenstein (ML 5876)
Kathleen M. K. Matthews (KM 9138)
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, Pennsylvania 15219
Telephone: (412) 288-3131

*Attorneys for rue21, Inc.*

- 23 -