Tony C. Chang (TC 0390)
Law Offices of Tony C. Chang
299 Broadway, Suite 1700
New York, New York 10007
Telephone: (212) 868-9190

*Attorneys for Pegasus Integrated Consulting, Corp.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X
PEGASUS INTEGRATED CONSULTING, CORP.   :   Case No. 07CV3245 (WAP)
                                       :
                    Plaintiff,         :
                                       :   [N.Y. Sup. Ct. NY County
    -against-                          :   Index No. 07/601111]
                                       :
rue21, INC.                            :
                                       :
                    Defendant.         :
                                       :
---------------------------------------------------------------------------X

## **AFFIDAVIT OF FRANK CHIH**

STATE OF NEW YORK    )
                     )    SS:
COUNTY OF NEW YORK   )

FRANK CHIH, being duly sworn, hereby deposes and says the following:

1.    I am the sole shareholder and officer of Pegasus Integrated Consulting, Corp., (hereinafter "Pegasus") a New York corporation with its principal place of business at 520 Eighth Avenue, Suite 900, New York, New York 10018.  Further, up until March, 2007 I was a fifty (50%) percent shareholder, Chairman of the Board and Treasurer for Khaotik, Inc., (hereinafter "Khaotik") a California corporation with its principal office address at 671 South Anderson Street, Los Angeles, California 90023.

2. I have personal knowledge of the facts and circumstances set forth in this affidavit and I am willing to testify to such matters set forth below when called upon as a witness. As for certain other facts, I have relied upon records prepared in the ordinary course of business.

3. I make this affidavit on behalf of Pegasus and in opposition to Defendant's motion to dismiss or, alternatively, transfer the instant action.

4. Pegasus conducts business in the manufacturing and wholesale garment industry. Purchase orders are procured from retailers and resellers for garment merchandise which are then specifically made to order and delivered to the buyer. This action stems from certain purchase orders which were issued by Defendant, rue21, Inc. (hereinafter "rue21") and accepted by Pegasus.

5. Pegasus conducted its business with rue21 through its trade name Hung Tat. Hung Tat is not a corporate entity but instead a doing business as name utilized by Pegasus. rue21 and its personnel were fully cognizant of this fact and as such all Purchase Orders were in the name of Hung Tat. The legal entity responsible for the performance and satisfaction of the purchase orders was always Pegasus. In the course of business rue21 placed certain purchase orders with Pegasus. The purchase orders at issue between rue21 and Pegasus doing business under the trade name Hung Tat are identified as 2158, 2162, 2384, 2160, and 1027. Please see copies annexed hereto as Exhibit "1" (hereinafter "Purchase Orders")

6. This action was commenced because of rue21's failure to pay for goods delivered and received in accordance with the purchase orders promulgated. Defendant in its moving papers alleges that terms and conditions on the reverse side of the Purchase Orders are incorporated in the standard boiler plate form. However, Pegasus states herein that the reverse sides of the Purchase Orders were never provided nor issued. I did not receive a two-sided

Purchase Orders in person, by facsimile nor by email.  Purchase Orders were customarily emailed to me or my staff followed by a facsimile transmission.  In each occasion, only the front sides of the Purchase Orders were ever tendered.

7.	In ¶15 of Keith McDonough's affidavit (hereinafter "McDonough Aff.) which is annexed to rue21's moving papers, he contends that both sides of the completed Purchase Orders were provided to me in person.  This contention is simply untrue. I did not and have not received both sides of the Purchase Orders. In fact, Mr. McDonough was never present at any sales meetings I had with rue21 personnel when procuring the Purchase Orders. The Purchase Orders contained multi parts of which are separated upon completion and designated for their respective departments.  The vendor copy is then photo copied and tendered to me.  The reverse side was never tendered nor included in these photo copies.  Further, when Purchase Orders were emailed and facsimile transmitted only the front side is provided.  An examination of the facsimile header on Purchase Orders which were faxed clearly indicated that front pages were transmitted given the sequential order of all pages transmitted. (Please see Facsimile Headers annexed hereto as Exhibit "6")

8.	Also in McDonough Aff. ¶ 15, he claims that I was fully familiar with the Purchase Orders, including the Terms and Conditions along with the Vendor Compliance Manual.  I could not have been familiar with the Terms and Conditions on the reverse side of the Purchase Orders because I have not seen or read it.  The reverse sides, as stated before, were never provided by rue21.

9.	Additionally, rue21 did not submit a Vendor Compliance Manual, As Amended. Mr. McDonough states that I had signed a Vendor Compliance Manual on behalf of Venture Polygon in the past.  However, Venture Polygon was an entirely different corporate entity with

different shareholders which no longer conducts business with rue21. Further, I do not recall ever reading the terms and conditions on the reverse side of the purchase order in the former outdated Vendor Compliance Manual. My actions for Venture Polygon can not transfer to the case at bar. Any assumption made by rue21 would clearly be misplaced. Contractual terms and conditions allegedly incorporated by reference must be made available. With respect to the Purchase Orders those Terms and Conditions were not made available by rue21.

10. McDonough Aff. ¶ 5 contends and placed much emphasis on the fact that the face of the purchase order conspicuously contains specific language asking vendors to read the reverse side of the purchase order and makes reference to a Vendor Compliance Manual As Amended. However, even should a Vendor notice the language, which point size is smaller than other words contained on the front side, no reverse side was available to be read.

11. McDonough Aff. alludes to the fact that the terms on the reverse side is highly important. However, not one rue21 personnel advised, informed or acknowledge to me that the reverse side of the purchase orders contained necessary and important provisions. If the reverse side was as essential as defendant claims, then why did every rue21 personnel neglect to make or provide copies of the reverse side on all the Purchase Orders?

12. Defendant's motion contains an affidavit by Carlos Gomez which in paragraph 8 purports to have received many two sided copies of these Purchase Orders. Again this is simply untrue. Contrary to Mr. Gomez's statements, I accompanied Mr. Gomez to every meeting with rue21 and never did he nor did I receive a two sided copy of the Purchase Orders. Additionally, I was carbon copied on all emails containing the Purchase Orders and not one had the reverse side provided.

13. Further in paragraph 6 of the Gomez affidavit, he stated that in connection with the Purchase Orders, he received and reviewed the Vendor Compliance Manual. This statement is again untrue given that I accompanied Mr. Gomez to all meetings with rue21 and we did not receive a Vendor Compliance Manual As Amended. In fact, upon information and knowledge, it is customary for rue21 to have vendors sign the Vendor Compliance Manual to acknowledge receipt. However, in the instant action no documentary evidence is submitted by the Defendant to support their contentions. The obvious reason was that no Vendor Compliance Manual As Amended was ever provided to me.

14. Mr. Gomez is only a twenty-five (25%) shareholder in Khaotik. Mr. Gomez primary role is a designer for the company. He did not have authority outside his role as a designer. I was responsible for all sales, manufacturing and financing. His affidavit in support of Defendant's motion could only be explained as a self-serving initiative to gain favor with rue21 based on his business activities with rue21 without my knowledge.

15. Upon learning of his affidavit, I had occasion to speak with Mr. Gomez and he finally admitted his business activities with rue21. He informed me that he was asked by Defendant to submit his affidavit to support rue21's position. Ostensibly, in order to avoid jeopardizing his business with rue21 he agreed so he may preserve his continuing business relationship with rue21.

16. rue21 with its motions seeks as an alternative to dismiss this action pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim upon which relief may be granted. In support of this contention, Defendant alleges that Pegasus was not the vendor in any of the transactions upon which Plaintiff filed suit. On the contrary, as stated above, Pegasus did business with rue21 through its trade name Hung Tat. Hung Tat is not a separate legal entity. rue21 and its

personnel were fully cognizant of this fact from the inception of business activities. Invoices were issued to rue21 with Pegasus letterhead. (Please see copies of invoices at issue herein annexed hereto as Exhibit "2")  In fact, all payments made under prior purchase orders naming Hung Tat as vendor were paid by rue21 directly to Pegasus. Please find annexed hereto as Exhibit "3" copies of wire transfer confirmation reflecting rue21's payment to Pegasus for prior purchase orders under the Hung Tat name.  Therefore, Defendant's claim that Pegasus was not the vendor and unaware of its identity is disingenuous at best.

17. Khaotik is a separate legal entity.  However, Pegasus was the affiliated company handling the management, sales, manufacturing, distribution and financing for Khaotik's business.  Consequently, Pegasus invoices outstanding obligations owed to Khaotik. Please see copies of unpaid invoices for Khaotik to rue21 annexed hereto as Exhibit "4".

18. Furthermore, Khaotik sold all purchase orders from rue21 to Pegasus to satisfy outstanding debt obligations and to reconcile accounts.  Please see copy of Sales Memorandum annexed hereto as Exhibit "5".

19. Among these purchase orders include those which rue21 had cancelled and subject to the instant suit.  Please see copies of purchase orders annexed hereto as Exhibit "6".

20. Based on the foregoing, Pegasus is the proper party to commence this action and seek the relief as requested.

21. In summary, all the purchase orders received by Pegasus from rue21, Inc. did not contain the reverse side and Pegasus never received or reviewed the Terms and Conditions as contained in the Vendor Compliance Manual.

22. Pegasus office, personnel and records are primarily located in New York County in the State of New York.

23. The legal arguments and case authority in opposition to this Motion are set forth in the accompanying memorandum of law filed herewith.

I do declare under penalty of perjury that the foregoing is true and correct.

                                                                                                                  _____

                                                                                                                                    FRANK CHIH

SWORN TO BEFORE ME ON
THIS \_\_\_\_\_ DAY OF JUNE 2007

_____
Notary Public