Andrew L. Morrison (AM 1071)
Zoe F. Feinberg (ZF 7705)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400

Michael E. Lowenstein (ML 5876)
Kathleen M. K. Matthews (KM 9138)
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, Pennsylvania 15219
Telephone: (412) 288-3131

*Attorneys for Rue 21, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

PEGASUS INTEGRATED CONSULTING, CORP.,          :
                                               :          Case No. 07 CV 3245 (WHP)
                        Plaintiff,             :
                                               :
                                               :          [N.Y. Sup. Ct. N.Y. County
            -against-                          :          Index No. 07/601111]
                                               :
RUE 21, INC.                                   :
                                               :
                        Defendant.             :
                                               :
-------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT RUE 21'S MOTION TO DISMISS OR TRANSFER**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ......................................................................................................1

THIS ACTION SHOULD BE DISMISSED BECAUSE VENUE IN THE SOUTHERN
    DISTRICT OF NEW YORK IS IMPROPER ........................................................1

    A.    The Admitted And Undisputed Facts ........................................................1

    B.    These Admitted And Undisputed Facts Mandate Dismissal ........................2

    C.    Plaintiff's Claimed Factual Issues Are Irrelevant And Unfounded ..............4

    D.    Plaintiff Essentially Concedes The Validity Of The Legal Authority Cited
        By rue 21 ..............................................................................................6

ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED FOR IMPROPER
    VENUE ......................................................................................................7

DISMISSAL IS WARRANTED BECAUSE PLAINTIFF PEGASUS FAILS TO STATE
    A CLAIM ...................................................................................................7

CONCLUSION....................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007)............................................. 9, 10

Conley v. Gibson, 355 U.S. 41 (1957).......................................................... 9

In re Level Export Corp., 305 N.Y. 82 (1952).............................................. 4

Lurie v. Norwegian Cruise Lines, Ltd., 305 F. Supp. 2d 352 (S.D.N.Y. 2004) ............................ 6

Unicon Management Corp. v. Koppers Co., Inc., 38 F.R.D. 474 (S.D.N.Y. 1965) ...................... 6

Wayland Investment Fund, LLC v. Millennium Seacarriers, Inc., 111 F.Supp. 2d 450 (S.D.N.Y. 2000) ........................................................................ 9

**Statutes**

Carriage of Goods By Sea Act............................................................. 6, 7

Fed. R. Civ. P. 12(b)(6)................................................................. 7, 10

## PRELIMINARY STATEMENT

In response to the Motion to Dismiss or, in the Alternative to Transfer (the "Motion") filed by Defendant, rue21, Inc. ("Defendant" or "rue21"), Plaintiff, Pegasus Integrated Consulting Corp. ("Plaintiff" or "Pegasus") has filed opposition papers comprised of a brief (Plaintiff's Brf.") and the affidavit of Frank Chih ("Chih Aff."). Plaintiff's opposition papers make almost no response to the ample legal authority cited by rue21. Instead, Plaintiff's papers are almost entirely devoted to contending, as a factual matter: 1) that Plaintiff is not bound by the forum selection clause at issue; and 2) that Plaintiff is a proper party to this action.

Plaintiff's effort to create factual issues is unavailing. As set forth below, the facts that matter are admitted or undisputed. These facts mandate dismissal or transfer of this action, both because the forum selection clause applies and because Plaintiff is not a proper party. This is clear from the admitted and undisputed portions of the affidavits of Keith McDonough, Senior Vice President and Chief Financial Officer of rue21 ("McDonough Aff.") and Carlos Gomez ("Gomez Aff."), a shareholder of Khaotik, Inc. ("Khaotik"), and the Attorney Affidavit of Andrew L. Morrison ("Morrison Aff."), filed with and in support of the Motion. Furthermore, as shown by the accompanying reply affidavits of Michael Dayieb, Vendor Relations Supervisor of rue21 ("Dayieb Aff.") and Kim Reynolds, Senior Vice-President and General Merchandise Manager of rue21 ("Reynolds Aff."), filed herewith, Plaintiff's allegations that attempt to create factual issues, in addition to being irrelevant, also are incorrect.

## ARGUMENT

### POINT I

### THIS ACTION SHOULD BE DISMISSED BECAUSE VENUE IN THE SOUTHERN DISTRICT OF NEW YORK IS IMPROPER

#### A.    The Admitted And Undisputed Facts

Although Plaintiff attempts to create potential factual disputes to avoid the application of the forum selection clause, the allegations that Plaintiff has admitted or not disputed are dispositive. Specifically, it is admitted or undisputed that:

1. The Purchase Orders at issue are binding contracts. Complaint at ¶¶ 22, 29 and 73.

2. Plaintiff received the face side of each Purchase Order. Chih Aff. at ¶ 6.

3. The face side of each Purchase Order specifies in all capital letters and in bold print that the terms and conditions on the face and reverse side of the Purchase Order ("Terms and Conditions") and rue21's Vendor Compliance Manual are part of the Purchase Order. McDonough Aff. at ¶ 5, McDonough Aff. Ex. A; Chih Aff. Ex. 1, 6.

4. The Vendor Compliance Manual also includes a copy of both sides of the Purchase Order, including the Terms and Conditions. McDonough Aff. at ¶ 6. See also McDonough Aff. Ex. B; Vendor Compliance Manual at pp. A-1, D-1, D-2.

5. The reverse side of the Purchase Order and the copy of the Purchase Order in the Vendor Compliance Manual both contain the forum selection clause. McDonough Aff. Ex. A, B.

6. Khaotik was the vendor with respect to 18 of the 23 Purchase Orders at issue, over 75%. Chih Aff. Ex. 1, 6.

7. Khaotik was aware and agreed that the Vendor Compliance Manual and the Terms and Conditions were a binding part of each of the Purchase Orders. Gomez Aff. at ¶ 8.

8. Frank Chih, who was a representative of both Khaotik and Hung Tat Industrial Development Co. ("Hung Tat"), the Vendor as to the other five of the 23 Purchase Orders at issue, regularly dealt with rue21 on Vendor Compliance Manual issues on behalf of Hung Tat and Khaotik, including, for example, with respect to Non-Compliance chargeback amounts required by the Vendor Compliance Manual for late delivery, quality problems, shipments of incorrect amounts, and reductions in Non-Compliance chargebacks pursuant to agreed allowances. McDonough Aff at ¶¶ 16-18.

9. At times the Purchase Orders were written in person, and each Purchase Order was a multi-layered document containing a copy for the Vendor. Chih Aff. at ¶ 7; McDonough Aff. at ¶ 15.

**B.    These Admitted And Undisputed Facts Mandate Dismissal**

These undisputed and admitted facts are dispositive and show that the forum selection clause was part of the Purchase Orders at issue. First, the face of the Purchase Orders alone resolves the issue. McDonough Aff. Ex. A. These Purchase Orders advised the Vendor repeatedly and conspicuously that the Terms and Conditions on the reverse side of the Purchase Order and the Vendor Compliance Manual, both of which include the forum selection clause, are

part of the Purchase Order. Its admonition, made over and over again, could not have been clearer:

**ATTENTION VENDOR ("SELLER")**

**CAREFULLY READ THE FACE AND REVERSE SIDES OF THIS PURCHASE ORDER AND THE rue21 VENDOR COMPLIANCE MANUAL AS AMENDED. THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDES HEREOF AND THE VENDOR GUIDELINES EXPLAINED IN THE rue21 VENDOR COMPLIANCE MANUAL ARE PART OF THIS PURCHASE ORDER.**

Second, as to Khaotik, Plaintiff does not and cannot dispute that "Khaotik was aware and agreed that the Vendor Compliance Manual and the Terms and Conditions were a binding part of each of the each of the Purchase Orders whether or not a two-sided copy was provided." Gomez Aff. at ¶ 8. The face of the Purchase Orders states this explicitly, and Khaotik testified that it knew this. As to Khaotik, which Plaintiff now admits was the Vendor for over 75% of the Purchase Orders at issue, this is simply the end of the story. Plaintiff's attempts to dispute that Khaotik received the reverse side of the Purchase Order and the Vendor Compliance Manual are incorrect, as discussed below, but irrelevant in any event.

Third, as to Hung Tat (and as additional evidence as to Khaotik) there is no dispute that Mr. Chih was fully familiar with the Vendor Compliance Manual, which also contained the Purchase Order, including the forum selection clause. Plaintiff does not and cannot dispute that Mr. Chih worked with the Vendor Compliance Manual on a regular basis on behalf of Hung Tat and Khaotik, as set forth in detail in Paragraphs 16-18 of the McDonough Affidavit. This course of dealing belies any contention that the Vendor Compliance Manual was not part of the agreements at issue, or that Mr. Chih was not fully aware of this.

Fourth, Mr. Chih admits that at times the Purchase Orders were written in person and that the Purchase Order form was a multi-layered form including a Vendor copy and that he received at least the face side of the Vendor copy of the Purchase Orders at the meetings. Chih Aff. at ¶ 7. It strains credulity that Mr. Chih would leave the meetings without the actual two-sided pink Vendor copy of the Purchase Orders that had been written at these meetings. Regardless, Mr.

Chih had the two-sided form available to him, in person, on numerous occasions and could have read it at any time, especially since the face of the Purchase Orders he admits receiving repeatedly directed him to "**CAREFULLY READ THE FACE AND REVERSE SIDES OF THIS PURCHASE ORDER.**"

In sum, this case does not involve an attempt to apply a forum selection clause to an unsuspecting consumer. This was an ongoing commercial relationship with standard terms and conditions, the applicability of which was emphasized repeatedly in the explicit language of the Purchase Order and the Vendor Compliance Manual. See In re Level Export Corp., 305 N.Y. 82 (1952) (petitioner was contractually bound to the terms of a document incorporated by reference where the document was clearly identified in the contracts and petitioner was a sophisticated exporter experienced in the textile industry).

### C.      **Plaintiff's Claimed Factual Issues Are Irrelevant And Unfounded**

Plaintiff attempts to raise several factual issues. As shown above, these issues are irrelevant. In addition, Plaintiff's claimed factual issues are unfounded. Plaintiff contends that Khaotik did not receive the reverse side of the Purchase Order and the Vendor Compliance Manual. Chih Aff. at ¶¶ 12,13. The explicit language of the Gomez Affidavit to the contrary is confirmed by the Dayieb Affidavit, which states that Khaotik received the Vendor Compliance Manual in person on July 19, 2006 and again by mail on August 21, 2006. Dayieb Aff. at ¶¶ 12-14; Dayieb Aff. Ex. D. Since Khaotik received the Vendor Compliance Manual it also received the two-sided Purchase Order contained therein. In addition, Mr. Chih's own affidavit attaches the face side of the pink Vendor copy of the Khaotik Purchase Orders written at rue21 on July 19, 2006 and the Reynolds Affidavit states that Mr. Chih was provided with the two-sided pink Vendor copies of some if not all of the July 19, 2006 Khaotik Purchase Orders. Reynolds Aff. at ¶¶ 12,13. Mr. Chih also received the two-sided pink Vendor copy of the Purchase Order many times over the years and had discussed the Purchase Order and the Vendor Compliance Manual with Ms. Reynolds many times. Id. at ¶¶ 9-11.

- 4 -

Plaintiff also contends that Hung Tat did not receive the Vendor Compliance Manual. Chih Aff. at ¶ 9. In fact, the Vendor Compliance Manual was shipped to Hung Tat on or about February 3, 2006 and the updated Vendor Compliance Manual was shipped to Hung Tat on or about June 2, 2006. Dayieb Aff. at ¶¶ 8-10. Indeed, the same day the initial Khaotik Purchase Orders were written, Mr. Chih and Ms. Reynolds agreed to an adjustment of Non-Compliance chargebacks under the Vendor Compliance Manual with respect to certain Hung Tat Purchase Orders. Reynolds Aff. at ¶ 14; Reynolds Aff. Ex. A. Yet Plaintiff somehow contends that Mr. Chih was not provided the Vendor Compliance Manual.

Plaintiff argues that it is not clear which version of the Vendor Compliance Manual is applicable. Plaintiff's Brf. at p. 8. In fact, as the Dayieb affidavit explains, there were no changes at all to the Vendor Compliance Manual during the period of the Khaotik Purchase Orders and the one revision during the period of the Hung Tat Purchase Orders, which did not change the forum selection clause, was provided and explained to Hung Tat. Dayieb Aff. at ¶¶ 8-15: Dayieb Aff. Ex. A-D. McDonough Aff. Ex. B. Plaintiff also does not dispute that Mr. Chih worked with the Vendor Compliance Manual on a regular basis, as set forth in Paragraphs 16-18 of the McDonough affidavit, which of course he could not have done if he was not aware of the provisions of the Vendor Compliance Manual.

Plaintiff also argues that the Vendor Compliance Manual is included in a Vendor Compliance Agreement that was not signed. Plaintiff's Brf. at pp. 3-4. With a fast moving business with hundreds of vendors, hundreds of stores and vendors moving in and out, it is not always possible to ensure that the Vendor Compliance Agreement is signed. rue21 therefore also explicitly and conspicuously states on the front of each Purchase Order that the Vendor Compliance Guidelines explained in the Vendor Compliance Manual are part of every Purchase Order. McDonough Aff. Ex. A. In addition, Paragraph 1 of the Terms and Conditions on the reverse side of the Purchase Order specifies that the Vendor Compliance Agreement and associated Vendor Compliance Guidelines are part of the Agreement. Id. Thus, rue21 has

- 5 -

included multiple layers to ensure that Vendors are fully apprised of the applicable contract terms, and to protect rue21 from a Vendor who attempts after the fact to avoid these terms.

In sum, rue21 submits that Plaintiff's attempt to raise factual issues is without merit. However, should the Court deem it necessary to resolve any of these claimed disputes to decide the Motion, rue21 stands ready to prove that Plaintiff's allegations that dispute rue21's are incorrect, and respectfully requests -- without waiving any rights with respect to its improper forum arguments -- that the Court conduct a limited evidentiary hearing to resolve any such disputes. See, e.g., Lurie v. Norwegian Cruise Lines, Ltd., 305 F. Supp. 2d 352, 358 (S.D.N.Y. 2004) (hearing held where submissions of parties revealed conflicts on material issues, after which forum selection clause was upheld); Unicon Management Corp. v. Koppers Co., Inc., 38 F.R.D. 474, 477 (S.D.N.Y. 1965).

### D.    Plaintiff Essentially Concedes The Validity Of The Legal Authority Cited By rue 21

Notably, Plaintiff does not dispute the authority cited in detail at pages 9-16 of rue21's opening brief showing that forum selection clauses are properly and, indeed, routinely, enforced. Although Plaintiff disputes the applicability of the forum selection clause, Plaintiff does not dispute the enforceability of forum selection clauses generally, does not dispute that the clause is mandatory and applies to Plaintiff's entire Complaint, does not contend that the clause is unreasonable or unjust, and does not dispute that if the forum selection clause is enforceable, this action should be dismissed.

Plaintiff makes a passing stab at arguing that the forum selection clause is unenforceable, Plaintiff's Brf. at 6, but Plaintiff admits that "Courts have recognized unambiguous and legible terms and conditions contained on the reverse side of pre-printed boilerplate agreements." Id. Plaintiff does not allege that the forum selection clause was ambiguous or illegible, only that it does not apply. Further, the cases Plaintiff cites in support of this argument involve interpretation of ambiguous contract provisions governed by the since repealed Carriage of

Goods By Sea Act, and do not involve the issue in the present case. <u>Id</u>. Therefore, upon a determination that the forum selection clause applies, this action should be dismissed.

<b>POINT II</b>

<b>ALTERNATIVELY, THIS ACTION SHOULD BE<br>TRANSFERRED FOR IMPROPER VENUE</b>

Plaintiff does not dispute that this action should be dismissed if the forum selection clause applies. However, if it is necessary to reach the alternative issue of transfer, this action should be transferred to the United States District Court for the Western District of Pennsylvania. Plaintiff's primary argument again is that the forum selection clause does not apply and that deference therefore should be given to Plaintiff's choice of forum. Plaintiff does not dispute that if the forum selection clause applies it is dispositive or, at a minimum, of central relevance to the transfer inquiry. Nor does Plaintiff dispute the fact that rue21 and its records are in Pennsylvania or that Khaotik, the Vendor for over 75% of the Purchase Orders, is in California.

<b>POINT III</b>

<b>DISMISSAL IS WARRANTED BECAUSE PLAINTIFF<br>PEGASUS FAILS TO STATE A CLAIM</b>

rue21 alternatively moved to dismiss the Complaint pursuant to 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") because Plaintiff is not a proper party to this action. Plaintiff now admits that the Vendors for the Purchase Orders at issue are Khaotik and Hung Tat and that Khaotik is a separate legal entity and not a trade name as Plaintiff represented to the Court by letter dated April 30, 2007. Chih Aff. at ¶¶ 16, 17; Morrison Aff. at ¶ 2; Morrison Aff. Ex. A. As to Hung Tat, Plaintiff maintains that Hung Tat is a trade name, that Pegasus submitted invoices for Hung Tat on Pegasus letterhead and that rue21 has paid such invoices. The Chih Affidavit purports to attach invoices on Pegasus letterhead for the Hung Tat Purchase Orders for which Plaintiff seeks payment in this action. Chih Aff. at ¶¶ 16-17; Chih Aff. Ex. 2,4.

The actual facts as to Hung Tat are <u>dramatically</u> different. Between August and November 2006, rue21 received invoices for the Purchase Orders at issue on <u>Hung Tat</u>

- 7 -

letterhead. Dayieb Aff. at ¶ 16; Dayieb Aff. Ex. E. These Hung Tat invoices were not paid. On or about January 15, 2007, counsel for Plaintiff sent a demand letter to rue21. Dayieb Aff. at ¶ 18; Dayieb Aff. Ex. G. Recognizing that there was a fundamental problem as to the contracting Vendor, this letter included new, altered invoices replacing the Hung Tat letterhead with Pegasus letterhead. Id. These altered invoices also were not paid.

Thus, the actual invoices are consistent with the fact that Hung Tat, not Pegasus, is the contracting Vendor on the Hung Tat Purchase Orders. Plaintiff points out that in the past rue21 had paid Pegasus on Hung Tat Purchase Orders. This is correct and, as rue21 advised the Court at the May 18, 2007 conference (see transcript of May 18, 2007 conference, at 3), it is not rue21's position that it had never heard of Pegasus. In those instances, however, rue21 paid Pegasus where the contracting Vendor, Hung Tat, asked that rue21 do so. That is an entirely different circumstance, as Plaintiff recognized in submitting altered invoices in advance of filing this suit. Prior to the January 15, 2007 demand letter containing the altered invoices, rue21 had never received invoices for Hung Tat Purchase Orders on Pegasus letterhead. See Dayieb Aff. at ¶ 19. Furthermore, even if the prior invoices from Hung Tat that were payable and paid to Pegasus are viewed as assignments to which rue21 consented, rue21 has not consented to the assignment of the Purchase Orders at issue in this case. Pegasus has not demonstrated that it has the legal right to bring suit on the Hung Tat invoices.

The facts as to Khaotik are equally clear. Khaotik was a new company and the invoices rue 21 received in November or December 2006 for Purchase Orders 2190 and 2636 were the first two invoices received with respect to any Khaotik Purchase Orders. Id. at ¶ 17; Dayieb Aff. Ex. F. These invoices were incorrectly sent by Hung Tat, not by Khaotik and not by Pegasus. Id. The January 15, 2007 demand letter also included altered invoices on Pegasus letterhead for Khaotik Purchase Orders 2190 and 2636. Dayieb Aff. at ¶ 18; Dayieb Aff. Ex. G. rue21 has never made any payment to Pegasus (or any other entity) with respect to any Khaotik Purchase Orders. Dayieb Aff. at ¶ 17. Moreover, as to the cancelled Khaotik Purchase Orders upon which Plaintiff filed suit, and which it has now identified (Chih Aff. at 19; Chih Aff. Ex. 6), rue21 has

- 8 -

never received <u>any</u> invoice with respect to these cancelled orders. Dayieb Aff. at ¶ 20. Nor did

the January 15, 2007 demand letter even mention these cancelled orders. Dayieb Aff. Ex. G.

Faced with these stark facts, Plaintiff now claims that Pegasus purchased the rights to the

Khaotik Purchase Orders. Plaintiff blithely ignores Paragraph 15 of the Purchase Orders

(McDonough Aff. Ex. A) that expressly forbids assignment:

> ASSIGNMENT; WAIVER: Seller shall not assign or delegate all or any
> portion of its rights, interest, liabilities or obligations under this
> Agreement, whether done orally, in writing or by operation of law, to any
> person, firm, corporation or governmental agency, without Buyer's prior
> written consent.

Plaintiff presumably argues that the provision forbidding assignment does not apply

because, like the forum selection clause, it appears on the back of the Purchase Orders. This

argument fails for the same reasons discussed above as to the forum selection clause. Plaintiff

also does not discuss or contest the legal authority cited in rue21's opening brief that a stranger

to a contract has no right to enforce the contract. Instead, the only authority Plaintiff cites,

<u>Wayland Investment Fund, LLC v. Millennium Seacarriers, Inc.</u>, 111 F.Supp. 2d 450, 451

(S.D.N.Y. 2000), is based on the Supreme Court's language in <u>Conley v. Gibson</u>, 355 U.S. 41,

47 (1957), which had held that "a complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." However, in its recent decision in <u>Bell Atlantic Corp. v.

Twombly</u>, 127 S.Ct. 1955, 1969 (2007), the Supreme Court explicitly overruled this aspect of

<u>Conley v. Gibson</u>. The Court emphasized that "a plaintiff's obligation to provide the 'grounds'

of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S.Ct. at 1964-65. The

Supreme Court in <u>Twombly</u> also recognized the huge expense that defendants face when

complaints without proper allegations are permitted to proceed to discovery and the tendency for

such liberal pleading standards to force defendants to settle cases in order to avoid exorbitant

discovery costs. <u>Twombly</u>, 127 S.Ct. at 1967. As set forth above, Plaintiff utterly fails to meet

the standard enunciated by the Supreme Court in <u>Twombly</u> and, indeed, Plaintiff does not even acknowledge this standard.

In sum, Plaintiff's machinations notwithstanding, the contracts at issue are with Hung Tat and Khaotik and these are the only entities that can bring suit with respect to these contracts. Plaintiff's conduct shows that it was fully aware of this and attempted to hide the problem by submitting altered invoices. Plaintiff cannot do so. This case therefore alternatively should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons set forth herein and in rue21's opening brief and supporting affidavits, Defendant rue21 respectfully requests the Court to dismiss this action or transfer it to the United States District Court for the Western District of Pennsylvania, and to award such further relief as the Court deems just and proper.

REED SMITH LLP

Dated: New York, New York
      July 2, 2007

By: _____
Andrew L. Morrison (AM 1071)
Zoe F. Feinberg (ZF 7705)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400

Michael E. Lowenstein (ML 5876)
Kathleen M. K. Matthews (KM 9138)
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, Pennsylvania 15219
Telephone: (412) 288-3131

*Attorneys for rue21, Inc.*

## CERTIFICATE OF SERVICE

I, Zoe Feinberg, hereby certify that on the 2nd day of July, 2007, I caused a true and correct copy of the foregoing Reply Memorandum of Law in Support of Defendant rue21 Inc.'s Motion to Dismiss or Transfer, to be served by filing with the Court's Electronic Case Filing system and in addition, by first class mail, postage prepaid, addressed to:

Tony C. Chang, Esq.
299 Broadway, Suite 1700
New York, New York 10007

_____
Zoe Feinberg